UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

SEAN THOMPSON, M.D.,

                    Plaintiff,            13 Civ. 1896

  -against-                                 OPINION

THE JAMAICA HOSPITAL MEDICAL CENTER,
NYU HOSPITALS CENTER, NEW YORK UNIVERSITY
MEDICAL CENTER, NYU LANGONE MEDICAL
CENTER, NYU HOSPITAL FOR JOINT DISEASES,

                    Defendants.

------------------------------------------X

A P P E A R A N C E S:

        Attorneys for Plaintiff

        FRIER LEVITT
        84 Bloomfield Avenue
        Pine Brook, NJ 07058
        By:  Jonathan E. Levitt, Esq.
             Michelle L. Greenberg, Esq.

        Attorneys for Jamaica Hospital Defendants

        MARTIN CLEARWATER & BELL, LLP
        220 East 42nd Street
        New York, NY 10017
        By:  Gregory B. Reilly, Esq.
             Adam G. Guttell, Esq.

        Attorneys for NYU Defendants

        WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
        150 East 42nd Street
        New York, NY 10017-5639
        By:  Ricki E. Roer, Esq.
             William F. Cusack, Esq.
             Valerie L. Hooker, Esq.

*USDC SDNY / DOCUMENT / ELECTRONICALLY FILED / DOC #: ___ / DATE FILED: 8/30/16*

**Sweet, D.J.**

Defendants Jamaica Hospital Medical Center ("JHMC") and NYU Hospitals Center, New York University Medical Center, NYU Langone Medical Center, and NYU Hospital for Joint Diseases (collectively "the NYU Defendants" and together with JHMC "the Defendants") have each moved pursuant to Rule 56, F. R. Civ. P. for summary judgment against Plaintiff Sean Thompson, M.D. ("Plaintiff" or "Dr. Thompson"). As set forth below, the motions are granted in part, and denied in part.

**Prior Proceedings**

Dr. Thompson filed the complaint against the Defendants on March 21, 2013 based on diversity jurisdiction, alleging violations of New York Labor Law §§ 740-741, which allows for whistleblower claims against an employer regarding dangers to public health and safety.

By order of June 19, 2015, in view of Plaintiff's failure to comply with his discovery obligations as set forth in a previous October 22, 2014 Order Plaintiff was limited to damages based on documents that had already been produced

1

pursuant to the Court's October 22, 2014 Order and Plaintiff was required to produce a computation of his damages within two weeks. By opinion of November 20, 2015, the Plaintiff failed to present additional evidence of damages in compliance with the October 22, 2014 Order and the June 19, 2015 Opinion and was not be permitted to submit any information not already in evidence about his damages.

The instant motions for summary judgment were filed on February 8, 2016. They were argued and marked fully submitted on April 14, 2016.

**The Facts**

Defendant JHMC offered Plaintiff the position of Director of the Total Join Replacement Program ("TJRP") on May 14, 2010. (Reilly Decl., Exhibit B.) Plaintiff's annual salary was approximately $250,000. (Reilly Decl., Exhibit C.) Plaintiff accepted this offer and began working as the Director of the TJRP on or about September 1, 2010. (Plaintiff's Deposition Transcript, Reilly Decl., Ex. B ("Pl. Tr.") at 60.) Among other staff whom Plaintiff oversaw, there were five medical residents who rotated through the service. (Pl. Tr. at 56:13-26, 57:2-24.)

Prior to being offered the position and accepting the position, JHMC and NYU were not sure whether to hire Plaintiff as the Director of the TJRP. Pauline Marks, a hospital administrator for JHMC, stated in an email on May 25, 2010 that based on conversations with Dr. Nadir Paksima and Dr. Bruce Flanz, Dr. Flanz believed that Plaintiff "would probably be too much trouble." (Guttell Decl., Ex. B, Bates No. JHMC 0211.) Plaintiff alleges that during the his employment negotiations that Dr. Paksima told him he was "making waves" by asking for specific contract terms about the "financial, ancillary staff, marketing" efforts that JHMC would make to ensure the program's success. (Pl. Tr. at 47:10-48:8)

Plaintiff was eligible for a bonus of 80% of all revenue for the TJRP procedures in excess of the cost of his salary and benefits. (Pl. Tr. at 129:20-130:25.) Therefore in order to be eligible for a bonus, revenues for the TJRP would need to have exceeded $250,000. Id. However, it is undisputed that Plaintiff and the TJRP did not earn sufficient revenue to warrant a bonus for Plaintiff in any year in which he was working for the Defendants. (Pl. Tr. at 129-132.)

From September 1, 2010 to December 31, 2010, the TJRP had 22 visits billing $53,000 and only collecting $7,000 of those total bills. (Dr. Angelo Canedo's Deposition Transcript, Reilly Decl., Ex. A ("Canedo Tr.") at 118:18-119:6.) Plaintiff's salary over that period of time was $81,000 and payments of nearly $33,000 for malpractice insurance. Id. In the 2011 calendar year, the TJRP had 67 visits billing $124,000 and collecting $20,700. (Canedo Tr. at 119:21-24.) Plaintiff's salary over that period of time was approximately $249,380 and $132,000 in malpractice insurance. Id.

Jeanne Mancision, Director of Finances at JHMC, emailed Plaintiff profit and loss data for TJRP as early as July 2011. (Guttell Decl., Ex. A; Pl. Tr. 129:22-25; 130:2-25; 132:2-21; Canedo Tr. 119:23-120:4; 167:2-10; Reilly Decl. Ex. F.)

Plaintiff advised Defendants about a number of patient health and quality of care issues dealing with cleanliness and sterility of the hospital. These issues included trash and flies in the operating room, mishandling of Operating Room culture swabs with dirty and unsterile gloves, assisting in the Operating Room with bloody gloves prior to the procedure, delays resulting in prolonged anesthesia time and potential increases

4

in infection rates, lack of sterile equipment for surgeries, patients laying in their own feces, and nursing issues.  (Pl. Ex. G, NYUMC00312, 000437-439, 000515-516, 000523-526, 000551-552; Ex. E, Canedo Tr. at 65:6-9, 145:18-150:7; Ex. H, Thompson Tr. 1 at 9:23-10:17, 13:22-17:12, 19:3-21:8, 24:15-26:10, 120:4-121:14, Ex. I Thompson Tr. 2 at 333:21-334:4, 337:2-338:11.) Plaintiff alleges that in response to his concerns about the nurses and other staff in the hospital that Dr. Canedo told him that he was "a young snot-nose surgeon who can't come here and demand changes."  (Pl. Tr. at 14:14-22.)  Dr. Canedo denied making this statement "because that's not my experience [with] him."  (Canedo Tr. at 183:4-7.)

On February 2, 2012, Dr. Canedo sent a letter to the Chair of Orthopedic Surgery, Dr. Nadir Paksima, confirming their earlier conversation that the TJRP's "volume has been insufficient to cover the costs" and that the hospital would be discontinuing the program.  (Reilly Decl., Ex. F.)  On February 3, 2012, Dr. Joseph Zuckerman, Chair of Orthopedics at NYU, met with Plaintiff and told Plaintiff that the TJRP was being discontinued because of "the volume of the cases" which was a "financial reason," Plaintiff alleges that Dr. Zuckerman noted the other reason was "the whole idea of me being difficult, you know, to get along with."  (Pl. Tr. at 346:2-11.)

5

On February 17, 2012, Dr. Zuckerman confirmed by letter what they had discussed on February 3, 2012 that JHMC "decided to discontinue the joint replacement initiative" because of issues with funding. (Reilly Decl., Ex. G.) In his deposition, Dr. Zuckerman testified that JHMC told him that the reason they ended the TJRP was because "the volume and growth of the program did not fulfill the expectations." (Dr. Joseph Zuckerman's Deposition Transcript, Reilly Decl., Ex. L ("Zuckerman Tr.") at 34:5-10.)

On March 6, 2012 Plaintiff wrote to Dr. Zuckerman confirming that he understood his position could no longer "be supported because of financial reasons." (Reilly Decl., Ex. H.) Defendants allowed Plaintiff to remain employed at the hospital through June 2012. (Pl. Tr. at 7:23-24.)

Since leaving JHMC and NYU, Plaintiff has been employed with Forest Hills Hospital, Queens Long Island Medical Group, Sall Myers, and Thompson Medical for a combined income of more than $500,000 per year. (Pl. Tr. at 244-255.)

After the TJRP was terminated, JHMC continued to hire general orthopedic surgeons, who "might in theory do an elective

case" of a total joint replacement surgery. (Canedo Tr. at 163:10-17.) However, Dr. Thompson did not want to stay on in general orthopedics because "Dr. Thompson was very clear that he did a specialty fellowship [in total joint replacement] for a reason." (Canedo Tr. at 163:20-25.)

**The Summary Judgment Standard**

Summary judgment is appropriate only where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The relevant inquiry on application for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52. A court is not charged with weighing the evidence and determining its truth, but with determining whether there is a genuine issue for trial. Westinghouse Elec. Corp. v. N.Y. City Transit Auth., 735 F. Supp. 1205, 1212 (S.D.N.Y. 1990) (quoting Anderson, 477 U.S. at 249). "[T]he mere existence of some alleged factual dispute between the parties will not defeat

an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine issue of material fact*." Anderson, 477 U.S. at 247-48 (emphasis in original).

**Plaintiff's Claim Under NY Labor Law § 740 Is Time Barred**

Plaintiff in this action brought claims under both NY Labor Law § 740 and § 741. An action under § 740 must be brought "within one year after the alleged retaliatory personnel action was taken." N.Y. Lab. Law § 740(4)(a). The parties agree that Plaintiff's claim arose on February 3, 2012 when he was notified that his position would be terminated in June 2012. (Pl. Tr. at 7:20-24.) This is because the claim begins to accrue when the employee is given a notice of termination for retaliatory reasons and not the actual termination date. Dykstra v. Wyeth Parm., Inc., 454 F. App'x 20, 23 (2d Cir. 2012). Here, Plaintiff filed his complaint on March 21, 2013, more than one year after his claim began to accrue on February 3, 2012.

Plaintiff also brought a claim under § 741, a related statute, which requires that he bring the action "within two years after the alleged retaliatory personnel action was taken." N.Y. Lab. Law § 740(4)(d). Plaintiff seeks to apply the two-

8

year limitations period for § 741 to both his § 741 and his § 740 claims because he brought the two claims concurrently. Plaintiff argues that the legislative intent was to apply the two-year limitations period of § 740(4)(d) to concurrent claims of § 740 and § 741 because § 741 was passed later and amended § 740.  Plaintiff argues that the legislature meant to apply this two-year limitations periods to cases bringing both claims concurrently since the purpose of the bill was to avoid significant risks to public health.  New York Bill Jacket, 2002 A.B. 9454, Ch. 24.

However, the legislature did not state that the two-year limitations period applied to cases in which § 740 and § 741 are brought concurrently, which it could have done while amending the statute to add § 741.  The more natural reading of the statutory text is to bar claims brought under § 740 that exceed the one-year limitations period articulated in § 740(4)(a), even when the plaintiff also brings a claim under § 741.  Geldzahler v. New York Medical College, 746 F.Supp.2d 618, 630 (S.D.N.Y. 2010) (dismissing a claim under § 740 as time barred while allowing a concurrent claim under § 741 to proceed).  Therefore, Plaintiff's § 740 claims are time barred and dismissed from this action.

**Plaintiff's § 740 and § 741 Claims Are Dismissed Because He Was Terminated for Non-Retaliatory Reasons**

Plaintiff has alleged that he was terminated from his position at JHMC and NYU in retaliation to his complaints about important quality of care issues. Plaintiff has alleged that he complained of a number of patient and quality of care deficiencies, including sanitary and infection control practices at JHMC. These issues included trash and flies in the operating room, mishandling of Operating Room culture swabs with dirty and unsterile gloves, assisting in the Operating Room with bloody gloves prior to the procedure, delays resulting in prolonged anesthesia time and potential increases in infection rates, lack of sterile equipment for surgeries, patients laying in their own feces, and nursing issues. (Pl. Ex. G, NYUMC00312, 000437-439, 000515-516, 000523-526, 000551-552; Ex. E, Canedo Tr. at 65:6-9, 145:18-150:7; Ex. H, Thompson Tr. 1 at 9:23-10:17, 13:22-17:12, 19:3-21:8, 24:15-26:10, 120:4-121:14, Ex. I Thompson Tr. 2 at 333:21-334:4, 337:2-338:11.)

Even if these issues impacted overall public health or safety concerns and violated a specific law, rule, or regulation as required under § 740 and § 741, these claims do not survive summary judgment because there was another valid reason why

10

Plaintiff was terminated: the low volume of patients and revenue that Plaintiff generated for the hospital.

Both statutes provide an exception for any potentially retaliatory termination that was based on other grounds. Under § 740(4)(c), it is a complete defense to a retaliatory claim under § 740 if "the personnel action was predicated upon grounds other than the employee's exercise of any rights protected by this section." N.Y. Labor Law § 740(4)(c). Similarly under 741, "it shall be a defense that the personnel action was predicated upon grounds other than the employee's exercise of any rights protected by this section." N.Y. Labor Law § 741(5).

Other actions have held that poor performance is a valid reason apart from retaliation for whistleblowing that serves as a complete defense to claims under § 740 and § 741. See Timberlake v. New York Presbyterian Hosp., No 05-cv-56167, 2009 WL 3122580, at *6 (S.D.N.Y. Sept. 29, 2009) (insubordination and performance issues were a complete defense to claims of retaliation for whistleblowing under § 741(5)); Luiso v. Northern Westchester Hosp. Center, 65 A.D.3d 1296, 1298, 886 N.Y.S.2d 216 (2d Dep't 2009) (same).

Here, Plaintiff's claims are dismissed because he was terminated for the non-retaliatory reason that the program he was running suffered from low volume and insufficient revenue to maintain the program. Plaintiff was eligible for a bonus in year in which revenue for the TJRP exceeded the cost of his salary and benefits, yet Plaintiff did not earn sufficient revenue to warrant a bonus in any year working for Defendants. (Pl. Tr. at 129:20-132:25.)

In fact, Plaintiff and the TJRP never brought in enough revenue to support its costs. From September 1, 2010 to December 31, 2010, the TJRP had 22 visits billing $53,000 and only collecting $7,000 of those total bills. (Dr. Angelo Canedo's Deposition Transcript, Reilly Decl., Ex. A ("Canedo Tr.") at 118:18-119:6.) Plaintiff's salary over that period of time was $81,000 and nearly $33,000 in malpractice insurance. Id. In the 2011 calendar year, the TJRP had 67 visits billing $124,000 and collecting $20,700. (Canedo Tr. at 119:21-24.) Plaintiff's salary over that period of time was approximately $249,380 and $132,000 in malpractice insurance. Id.

Plaintiff claims he was not aware of these issues with volume and revenue until the program was terminated in February 2012, but this claim is belied by the documentary evidence.

12

Jeanne Mancision, Director of Finances at JHMC, emailed Plaintiff profit and loss data for TJRP as early as July 2011, which showed that the TJRP was not supporting its costs. (Guttell Decl., Ex. A; Pl. Tr. 129:22-25; 130:2-25; 132:2-21; Canedo Tr. 119:23-120:4; 167:2-10; Reilly Decl. Ex. F.)

For these reasons, summary judgment is granted for Defendants because Plaintiff was terminated for the non-retaliatory reason that his program was earning significantly less than its costs.

**Defendant is Not Entitled to Attorneys' Fees Under §740(6)**

Defendant moved for attorneys' fees under § 740(6), which provides that "[a] court, in its discretion, may also order that reasonable attorneys' fees and court costs and disbursements be awarded to an employer" if the claim "was without basis in law or in fact." However, this motion is denied because Plaintiff's claims were based in law and fact. While Plaintiff's claims do not survive this summary judgment motion, his claim under § 741 was timely and the concerns he raised about patient health and quality of care including issues with several nurses, sterility practices, and infection risks

were non-frivolous claims under the statute.  For those reasons, Defendants' motion for attorneys' fees is denied.

**Plaintiff Named Improper NYU Defendants But the Case is Dismissed on Other Grounds**

The NYU Defendants argue that Plaintiff has failed to name his legal employer, New York University ("NYU"), the only NYU entity that can be properly named in this action.  Instead of naming the University, Plaintiff named NYU Hospitals Center, New York University Medical Center, NYU Langone Medical Center, and NYU Hospital for Joint Diseases.  However, these entities are not sufficient, even if they are trade names for the University or are corporations connected to, but separate from, the University.  These trade names and unrelated corporations cannot remain as proper Defendants in this action, but the case is already dismissed on other grounds.

Under the New York Constitution, "all corporations shall have the right to sue and shall be subject to be sued in all courts in like cases as natural persons."  N.Y. Const. Art. 10, § 4; see also, N.Y. Bus. Corp. Law § 202(a)(2).  However, a plaintiff cannot bring an action against a business operating under a trade name.  Kingvision Pay-Per-View, Ltd. v. Nunez, No.

14

05-CV-2931, 2007 WL 2815751, at * (E.D.N.Y. Sept. 25, 2007); Ragin v. Harry Mack Lowe Real Estate Co., Inc., 126 F.R.D. 475, 480 (S.D.N.Y. 1989); Provosty v. Lydia E. Hall Hosp., 91 A.D.2d 658, 659, 457 N.Y.S.2d 106 (2d Dep't 1982); Marder v. Betty's Beauty Shoppe, 38 Misc.2d 687, 687-88, 239 N.Y.S.2d 923, 924 (2d Dep't 1962).

Several Defendants would be dismissed from this action because they are trade names and not individuals or entities capable of suing or being sued. New York University Medical Center, NYU Langone Medical Center, and NYU Hospital for Joint Diseases are not legal entities amendable to suit. (NYU Rule 56.1 Statement, at ¶¶ 4-5.)[1] NYU Hospitals Center is a domestic not-for-profit corporation and can be sued as a legal entity. (NYU Rule 56.1 Statement, at ¶ 5.) However, Plaintiff's position was as a member of the faculty of the School of Medicine and Plaintiff was not employed by the NYU Hospitals Center. (NYU Rule 56.1 Statement, at ¶ 17.) Plaintiff's employment contract states that he is a member of the faculty

---

[1] The parties rely on Sculerati v. New York University et al., No. 126439/02, 2003 WL 21262371, at *1 n. 1 (Sup. Ct. N.Y. Cnty. May 16, 2003) to support their positions. Plaintiff argues that the case stands for the proposition that NYU Medical Center "is the commonly used name of the campus of NYU." However, the case also notes in the same footnote that the School of Medicine "is an administrative unite of NYU." Id. Further, NYU was also a named defendant in Sculerati, which is why the case did not need to address the issue presented here.

New York University School of Medicine and does not state that Plaintiff's employer is the NYU Hospitals Center. (NYU Rule 56.1 Statement, Ex. B.)

Courts have allowed parties who have not named the proper entities to have additional discovery into the appropriate entity to sue and refused to dismiss a claim for stating a trade name instead of a proper legal entity. Ragin v. Harry Mack Lowe Real Estate Co., Inc., 126 F.R.D. at 480-481; Darby v. Compagnie Nat. Air France, 132 F.R.D. 354, 355 (S.D.N.Y. 1990) (allowing Plaintiff to amend his complaint to name the proper legal entity since the proper defendant already had notice of the suit). Here, the proper entity, NYU, had notice of the suit. The NYU Defendants argue that they notified Plaintiff in their answer that only NYU was Plaintiff's employer and therefore the only legal entity that could properly be sued. (NYU Defendants' Answer, NYU Rule 56.1 Statement, Ex. P at ¶¶ 10-22.) However, Defendants' answer states that "Plaintiff was employed by the NYU School of Medicine, a division of New York University, a component of NYU Langone Medical Center." It was plausible that Plaintiff believed he had named NYU Langone Medical Center as a proper party. Further, Plaintiff's employment contract included information about hospital responsibilities at the NYU Hospitals Center, which is a valid

16

legal entity named in this suit that would support a good-faith belief that Plaintiff had named a proper party.

Despite these potential good-faith mistakes, Plaintiff did not name the appropriate legal entity as his employer in this action. However, summary judgment is granted on other grounds as noted above. In view of the grant of summary judgment to Defendants, NYU is deemed by the court to be a party defendant against which the complaint is also dismissed.

**Conclusion**

The Defendants' motions for summary judgment are granted in part, and denied in part.

It is so ordered.

New York, NY
August 30, 2016

ROBERT W. SWEET
U.S.D.J.